UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

SHAWN ANDERSON,

       Plaintiff,                                 Case No. 3:20-cv-520

vs.

GREATER DAYTON                        District Judge Michael J. Newman
REGIONAL TRANSIT AUTHORITY,

       Defendant.

---

**ORDER: (1) DENYING DEFENDANT'S SUMMARY JUDGMENT MOTION (DOC. NO. 27) AS TO COUNTS 1, 2, AND 3; (2) GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AS TO COUNTS 4 AND 5; AND (3) SETTING A TELEPHONE STATUS CONFERENCE WITH COUNSEL ON OCTOBER 3, 2022 AT 3:00 P.M.**

---

       This is an employment discrimination case. Plaintiff Shawn Anderson sued his former employer, Defendant Greater Dayton Regional Transit Authority ("RTA"), after it fired him from his transportation supervisor position. His five-count complaint alleges: (1) FMLA interference, 29 U.S.C. § 2615(a) (Count 1); (2) disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C § 12112(a), and Ohio law, Ohio Rev. Code § 4112.02(A) (Counts 2 and 3); (3) failure to accommodate his disability, 42 U.S.C. § 12112(b)(5) and Ohio Rev. Code § 4112.02(A) (Count 4); and (4) retaliation, Ohio Rev. Code § 4112.02(A) (Count 5). Doc. No. 2. Following the close of discovery, RTA now moves for summary judgment on each claim. Doc. No. 27. Anderson filed an opposition memorandum, and RTA replied. Doc. Nos. 34, 37. This matter is ripe for review.

## I. Undisputed Facts

### A. Undisputed Facts Relating to Counts 1–4

Anderson excelled as an RTA bus driver when hired in 2017. Doc. No. 29 at PageID 565.

So much so that he was promoted to a transportation supervisor position just months after he started.  Doc. No. 29-1 at PageID 596.  As a bus driver, Anderson drove a particular route while picking up and dropping off passengers.  Doc. No. 29 at PageID 564.  His responsibilities increased as a transportation supervisor.  *Id.* at PageID 567.  Anderson went from driving busses to "supervis[ing] daily operations" of bus and transportation drivers, "managing on-time performance," "ensur[ing] adequate" operator staffing, investigating accidents, administering post-accident drug tests, activating RTA's emergency preparedness plan, if necessary, and "interviewing, hiring, and training employees."  *Id.*; Doc. No. 29-2 at PageID 597–98.  RTA preferred its transportation supervisors have a commercial driver's license ("CDL") so that they could drive larger vehicles, but CDL licensure was not an official job requirement.  Doc. No. 23 at PageID 425–26; Doc. No. 29-2 at PageID 600.

Nor was bus driving among the official job responsibilities of a transportation supervisor.  Doc. No. 23 at PageID 425; Doc. No. 29-2 at PageID 597–600.  But transportation supervisors— especially those with CDLs, like Anderson—were expected to drive busses or other transportation vehicles when RTA was short staffed.  Doc. No. 23 at PageID 425; Doc. No. 29 at PageID 567.  Two of the nine non-disabled transportation supervisors, Michelle Gaines and Monica Hunt, never drove busses; but most did, including Anderson.  Doc. No. 23 at PageID 426; Doc. No. 29 at PageID 567–68.  Having supervisors who could also drive busses proved useful when RTA agreed to provide bussing for the Dayton Public Schools in Fall 2019.  Doc. No. 23 at PageID 425; Doc. No. 29 at PageID 568.  A "team player," Anderson frequently filled-in as a school bus driver when RTA was short operators.  Doc. No. 23 at PageID 425–26; Doc. No. 29 at PageID 569, 582.

It was during Anderson's January 8, 2020 shift as a school bus driver that the issues in this case arose.  Doc. No. 29 at PageID 576.  As he was finishing his route, Anderson began to feel

2

dizzy and nauseous to the point where he could not drive. *Id.* He pulled over and called his dispatcher, but managed to drive his bus back to the depot. *Id.* at PageID 576–77. Anderson saw a nurse practitioner the next day who suspected that the diesel fumes caused his dizziness and nauseousness. Doc. No 29-9 at PageID 629. She advised that Anderson not drive a transit bus for at least two months while he could be evaluated. *Id.*

Anderson sent his nurse's note to his supervisor, Fixed Route Manager Thomas Nichols, who forwarded it to RTA Director of Transportation Roland Caldwell. Doc. No. 23 at PageID 428; Doc. No. 24 at PageID 452; Doc. No. 29-9 at PageID 628. Caldwell and Nichols believed it was unsafe for Anderson to drive, and so they placed him on paid, non-disciplinary administrative leave until he could pass a fitness-for-duty exam. Doc. No. 23 at PageID 428–30; Doc. No. 24 at PageID 452. Anderson was confused by this decision because he felt he could perform all the official duties of his job, just not drive diesel busses. Doc. No. 29 at PageID 582; Doc. No. 34-1 at PageID 740–41. He made as much known to his superiors in an e-mail. Doc. No. 34-1 at PageID 740–41.

Even though Anderson was supposed to take his fitness test on January 15, 2020, Nichols informed him that morning he was cleared to return to work. Doc. No. 29 at PageID 582. Nichols asked him to report to work. *Id.* There, Nichols informed him that he was being reassigned, effectively immediately, to a transit ambassador position at RTA's Wright Stop Plaza where he was to observe busses coming and going from the platform and answer customer questions. *Id.*; Doc. No. 29 at PageID 584. Anderson asked to return to his transportation supervisor role, but Nichols said the transit ambassador position was his only option until further notice. Doc. No. 24 at PageID 453; Doc. No. 24-1 at PageID 461; Doc. No. 29 at PageID 585. Upon hearing the news, Anderson recalled he felt a wave of anxiety and his blood pressure rose. Doc. No. 29 at PageID

3

585. He told Nichols he "felt sick" and needed to go home before acknowledging the reassignment. *Id.* Nichols said Anderson refused the transfer and left work. Doc. No. 24 at PageID 453; Doc. No. 24-1 at PageID 461.

The next day, Anderson contacted RTA leave administrator Julie Hoffman, explaining, "I need to take some time off to deal with stress and my current health. Can you please explain what my options are and what other information you may need?" Doc. No. 34-6 at PageID 749. He did not indicate that his leave request was related to the dizziness and nauseousness he experienced while driving a diesel bus. *Id.* Hoffman offered to "send [Anderson] out some FMLA paperwork . . . to have [his] physician complete." *Id.* Anderson informed his supervisors that he would be out sick and was marked either off work or sick on staffing schedules from January 16 to 25, 2020. Doc. No. 34-5 at PageID 746; Doc. No. 34-7 at PageID 750. Despite that, Anderson's nurse practitioner had cleared him to return to work on January 17, 2020. Doc. No. 29-11 at PageID 631.

Caldwell viewed Anderson's absence, and refusal to report to the Wright Stop Plaza, as insubordination and a fireable offense under RTA's employee policy prohibiting noncompliance with a reasonable reassignment request. Doc. No. 29-13 at PageID 638. He decided to terminate Anderson by letter on January 23, 2020. *Id.* Caldwell did not know Anderson had requested FMLA-leave information until after he made the termination decision. Doc. No. 23 at PageID 432.

News of his firing did not reach Anderson until January 27, 2020. Doc. No. 29 at PageID 589–90. Three days earlier, Anderson e-mailed Hoffman to inquire about the FMLA enrollment forms. Doc. No. 20 at PageID 277; Doc. No. 34-8 at PageID 751. Hoffman knew then that Anderson was terminated but did not mention it in her reply message. Doc. No. 20 at PageID 277–

78. Anderson never completed his FMLA paperwork nor provided RTA with documentation from his health care provider that he was receiving treatment for his "stress" and "current health." *Id.*

### B. Undisputed Facts Relating to Count 5

With regard to Count 5, Anderson claims RTA retaliated against him when he was fired after he objected to RTA's hiring of his former supervisor, Arnold Isham. Doc. No. 2 at PageID 40. Anderson worked under Isham when he was employed at a separate bus company in Cincinnati, Ohio before he started working for RTA in 2017. *See* Doc. No. 16 at PageID 139; Doc. No. 29-10 at PageID 630. Before RTA hired Isham in 2018, Anderson emailed RTA management to lobby against hiring Isham, but, despite Anderson's concerns, RTA hired Isham anyway. Doc. No. 2 at PageID 40; Doc. No. 29-10 at PageID 630. Subsequently, in March 2019, Anderson sent a letter to RTA expressing his displeasure in working under Isham because he felt that Isham was harassing him. Doc. No. 29 at PageID 581; Doc. No. 29-10 at PageID 630.

### II. Motion for Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex*, 477 U.S. at 322; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed. R. Civ. P. 56(c)(1)(A) and (B). A court considering a motion for summary judgment must view

5

the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Anderson's FMLA Interference Claim (Count I)

Anderson first claims that RTA interfered with his right to take FMLA leave when it fired him. Doc. No. 2 at PageID 45. The FMLA authorizes covered employees to take up to twelve weeks of leave per year for certain health-related reasons, including "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" their employees' FMLA rights. 29 U.S.C. § 2615(a)(1). If, as is the case here, the employee elects to prove their FMLA interference case through indirect evidence, the Court applies the *McDonnell Douglas* burden-shifting framework. *See Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012).

To establish a *prima facie* case of FMLA interference, a plaintiff must show: (1) he was a covered employee; (2) the defendant meets the FMLA's definition of "employer"; (3) he was entitled to FMLA leave; (4) "he gave the employer notice of his intention to take FMLA leave; and (5) his employer denied FMLA benefits to which he was entitled." *Dyer v. Ventra Sandusky, LLC*, 934 F.3d 472, 475 (6th Cir. 2019) (citing *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 427 (6th Cir. 2014)). Anderson alleges he suffered from a "serious health condition" that prevented him from performing his job at the time of his termination. Doc. No. 2 at PageID 45. The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care . . . or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Anderson does not contend he needed inpatient care, and so his claim hinges on a showing of continuous treatment. Doc. No. 34 at PageID 722. "Continuing treatment," as defined by the FMLA regulations, means "[a] period of incapacity of

more than three consecutive, full calendar days . . . that also involves [t]reatment two or more times . . . by a health care provider." 29 C.F.R. § 825.115(a)(1) (cleaned up). "Incapacity" refers to an employee's inability "to work at all" or when the employee "is unable to perform any one of the essential functions of" their job. 29 C.F.R. § 825.123(a); *Branham v. Gannett Satellite Info. Network, Inc.*, 619 F.3d 563, 569–70 (6th Cir. 2010).

Implicit in the "continuing treatment" requirement is that the employee's incapacity must be caused by the serious health condition for which he or she receives care. 29 C.F.R. § 825.113(b) ("The term incapacity means inability to work, attend school or perform other regular daily activities *due to* the serious health condition" (emphasis added)). In other words, an employee is not "incapacitated" if their absences are unconnected to a health condition that limits their ability to perform essential job tasks. *See, e.g.*, *Olsen v. Ohio Edison Co.*, 979 F. Supp. 1159, 1166 (N.D. Ohio 1997) ("[A] plaintiff employee must show that he or she was prevented from working *because of* the injury or illness based on a medical provider's assessment of the claimed condition" (emphasis in original)).

Anderson claims that his diesel-fume sensitivity rendered him unable to perform an essential job task, *i.e.*, driving a diesel bus. Doc. No. 34 at PageID 722. He points to his nurse's note restricting him from driving a diesel-powered bus for at least two months while he underwent evaluation as evidence of his incapacitation. *Id.* at PageID 723. Anderson's supervisors understood this as a limit on the types of tasks he could perform and, for that reason, placed him on administrative leave before reassigning him to a non-driving role. *Id.* Assuming, *arguendo*, that bus-driving was an essential duty of a transportation supervisor, Anderson could not perform it. During his conversation with Nichols, Anderson recalled feeling "sick," that his anxiety flared up, and his blood pressure rose. Doc. No. 29 at PageID 584. He then e-mailed Hoffman to inquire

7

about FMLA leave for his "stress" and "current health." Doc. No. 29-12 at PageID 632.

Considering this, there is a genuine dispute of material fact that precludes summary judgment on Anderson's FMLA interference claim.

## IV. Anderson's Disability Claims (Counts II & III)

Anderson next claims that RTA demoted, and then fired, him because it believed he suffered from a disability. Doc. No. 2 at PageID 46–47; Doc. No. 34 at PageID 731–36.[1] "Title I of the [ADA] prohibits 'covered' employers from 'discharging' an employee because the employee is disabled, because the employee has a record of being disabled, *or* because the employer 'regards' the employee as disabled." *Babb v. Maryville Anesthesiologists, P.C.*, 942 F.3d 308, 318 (6th Cir. 2019) (quoting 42 U.S.C. §§ 12102(1), 12112(a)) (emphasis in original). A disability is a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Disability discrimination can be shown using indirect evidence under the *McDonnell Douglas* framework. *See, e.g.*, *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 522 (6th Cir. 2021) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Under the "regarded as" theory of disability discrimination, "your employer can't fire you because they think you are disabled, even if, in fact, you are not disabled." *Babb*, 942 F.3d at 310–11. To state a *prima facie* "regarded as" claim, the employee must show "that he or she has been

---

[1] "Because Ohio's disability discrimination law parallels the ADA, the the same analytical framework applies to [Anderson's] claims under Ohio Revised Code § 4112.02." *Anaissie v. Univ. Cincinnati Phys., Inc.*, No. 1:15-cv-701, 2018 WL 1456102, at *4 (S.D. Ohio Mar. 23, 2018) (citing *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008)).

8

subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment *whether or not the impairment limits or is perceived to limit a major life activity*." *Harrison v. Soave Enterprises, L.L.C.*, 826 F. App'x 517, 526 (6th Cir. 2020) (quoting 42 U.S.C. § 12102(3)(A) (emphasis in original)). The employer can rebut this showing by pointing to objective evidence that the perceived impairment was "both transitory and minor." *Babb*, 942 F.3d at 319 (quoting 29 C.F.R. § 1630.15(f)). Transitory impairments last or are "expected to last six months or less." 29 C.F.R. § 1630.15(f). If an employer cannot show the perceived impairment was transitory and minor, the employee has satisfied their *prima facie* case. *See, e.g.*, *Harrison*, 826 F. App'x at 526.

When that occurs, the employer has the burden to set forth a legitimate, non-discriminatory reason for the adverse employment action. *See Mullendore v. City of Belding*, 872 F.3d 322, 327 (6th Cir. 2017). The employee must then demonstrate the stated reason was pretextual, *i.e.*, not the real reason for the adverse employment action. *See Demyanovich*, 747 F.3d at 427. "To demonstrate pretext, a plaintiff may show that the defendant's proffered reason '(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Carter v. Univ. of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 463 (6th Cir. 2003)).

Several disputes of material fact preclude summary judgment of Anderson's disability discrimination claim.[2] A reasonable jury could find that Caldwell and Nichols reassigned, and

---

[2] RTA characterizes Anderson's "regarded as" argument as a new claim improperly brought at summary judgment. Doc. No. 37 at PageID 773. True, the phrase "regarded as" does not appear in Anderson's complaint. Doc. No. 2. But he did plead counts of disability discrimination under the ADA and Ohio law. *Id.* at PageID 46–47. Both statutes recognize "regarded as" claims as a theory of disability discrimination, not as a standalone cause of action. 42 U.S.C. § 12102(3)(A); Ohio Rev. Code § 4112.01(A)(13). RTA acknowledges this too: its opening summary judgment brief lists "regarded as" as one definition of disability under the ADA. Doc. No. 27 at PageID 529. Anderson's "regarded as" claim, therefore, was timely raised.

effectively demoted, Anderson because they believed his diesel-fume sensitivity prevented him from bus driving. Doc. No. 23 at PageID 428–30; Doc. No. 24 at PageID 452; Doc. No. 29-9 at PageID 628; Doc. No. 34-1 at PageID 739–41. Though RTA argues that Anderson's impairment was "transitory and minor" because his nurse cleared him to return to work on January 17, 2020, there is a dispute of fact over whether Anderson's nurse only found him fit to return to his supervisor job, which did not require him to drive a diesel bus. Doc. No. 23 at PageID 430; Doc. No. 29-11 at PageID 631.

Anderson established a genuine material dispute of fact concerning RTA's proffered termination explanation, too. Even though Caldwell stated he fired Anderson for refusing the reassignment, disputes of fact exist over whether Anderson actually turned down the transit ambassador position and whether it was Anderson's refusal, or that he could no longer fill in for RTA's regular school bus drivers, that prompted the termination. Doc. No. 23 at PageID 431–32; Doc. No. 24 at PageID 453; Doc. No. 24-1 at PageID 461; Doc. No. 29 at PageID 568–69, 582, 585. A reasonable jury could also doubt RTA's proffered termination explanation after learning that Gaines and Hunt did not drive diesel busses but kept their transportation supervisor jobs. Doc. No. 23 at PageID 425–26; Doc. No. 29 at PageID 568–69; Doc. No. 34-1 at PageID 739–41. Therefore, Anderson's two disability claims (Counts 2 and 3) should proceed to trial.

### V. Anderson's Failure to Accommodate and Retaliation Claims (Counts IV & V)

On the other hand, RTA is entitled to summary judgment on Anderson's failure to accommodate (Count 4) and retaliation (Count 5) claims. Anderson does not offer any response in his opposition memorandum to RTA's summary judgment request on these two counts. Doc. No. 34. Still, before summary judgment can be entered, the movant must carry its burden to show that no genuine dispute of material fact exists concerning the uncontested claims. *See Evans v. Plummer*, 687 F. App'x 434, 446 (6th Cir. 2017) ("[T]he moving party 'always bears the burden

of demonstrating the absence of a genuine issue as to a material fact,' and the district court is required 'to examine the movant's motion for summary judgment to ensure that he has discharged that burden'" (quoting *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)). *But see Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment" (citing *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011)). RTA satisfies its summary judgment burden on Anderson's Counts 4 and 5.

### A. Failure to Accommodate Claim

The ADA's broad definition of "discrimination" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . ., unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). Anderson "bears the burden of establishing (1) that he is disabled, and (2) that he is 'otherwise qualified for the position despite his [] disability: (a) without accommodation from the employer; (b) with an alleged essential job requirement eliminated; or (c) with a proposed reasonable accommodation.'" *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 417 (6th Cir. 2020) (internal quotations omitted) (quoting *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007)).

Anderson cannot state a *prima facie* failure to accommodate claim even affording him all favorable inferences. By pursuing a "regarded as" claim, he admits he was not disabled and not entitled to an accommodation. Doc. No. 34 at PageID 732–33; *see Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 467 (6th Cir. 1999); *Wells v. Cincinnati Children's Hosp. Med. Ctr.*, 860 F. Supp. 2d 469, 483 (S.D. Ohio 2012). Therefore, he concedes that RTA had no obligation to offer him a

reasonable accommodation. *See, e.g.*, *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 299 (6th Cir. 2019) (explaining that the basis of a failure to accommodate claim is proof of disability). Summary judgment is warranted in RTA's favor on Anderson's Count 4.

### B. Retaliation Claim

Anderson also alleges that he was fired in retaliation for objecting to RTA's hiring of his former supervisor, Isham. Doc. No. 2 at PageID 40. RTA does not dispute Anderson complained about Isham, but contends that his concerns did not amount to protected conduct and were temporally unrelated to his termination. Doc. No. 27 at PageID 540–41.

A *prima facie* case of retaliation requires a showing that the employee: (1) "engaged in a protected activity"; (2) "this exercise of protected rights was known to [the employer]"; (3) "the [employer] thereafter took an adverse employment action against [the employee]"; and (4) "there was a causal connection between the protected activity and the adverse employment action." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 995–96 (6th Cir. 2009) (quoting *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000)). Protected activity involves contestation of an employment practice made unlawful by the anti-discrimination statutes. *See* 42 U.S.C. § 12203(a); *see, e.g.*, *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 662–64 (6th Cir. 2020) (explaining that protected activity under the ADA requires objecting to conduct that violates the statute). Registering disagreement with an employer's decision alone does not constitute protected conduct. *See, e.g.*, *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989).

Neither Anderson's protestation over the hiring of, nor complaint about, Isham involved protected activity under the ADA. Doc. No. 2 at PageID 40; Doc. No. 29-10 at PageID 630. Anderson merely disagreed with RTA's decision to hire Isham. Doc. No. 29-10 at PageID 630. Moreover, his complaint about Isham's conduct (March 2019) occurred ten months before the

onset of his alleged disability (January 2020). Doc. No. 29 at PageID 581; Doc. No. 29-10 at PageID 630. Neither complaint referenced anything related to Anderson's alleged disability. Doc. No. 18 at PageID 231; Doc. No. 29-10 at PageID 630.

Anderson's retaliation claim suffers from a timing problem, too. A significant lag between the alleged protected activity and adverse employment action can defeat causation. *See, e.g.*, *Wilson v. Cleveland Clinic Found.*, 579 F. App'x 392, 400 (6th Cir. 2014) ("A time lag of seven months normally cannot support an inference of a causal link" (citation omitted)); *see also Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 452 (6th Cir. 2017) (two-and-one-half-month gap between protected activity and termination insufficient to show causation). Anderson's last complaint about Isham came, as noted, approximately ten months before he was fired. Doc. No. 29 at PageID 568; Doc. No. 29-10 at PageID 630. This gap negates any causation inference. As a result, Anderson cannot state a *prima facie* case of retaliation. RTA is entitled to summary judgment on Count 5.

## VI.

For the foregoing reasons, the Court **DENIES** RTA's summary judgment motion as to Counts 1, 2, and 3; and **GRANTS** RTA's summary judgment motion as to Counts 4 and 5. This case is scheduled for a telephone status conference with counsel on **October 3, 2022 at 3:00 p.m.**[3]

**IT IS SO ORDERED.**

Date:   September 20, 2022              s/Michael J. Newman
                                       Hon. Michael J. Newman
                                       United States District Judge

---

[3] To participate, the attorneys for the parties shall call: 1-888-278-0296, enter access code 2725365, security code 123456, and wait for the Court to join the conference.